GARWOOD, Circuit Judge,
dissenting in part:
I concur in all of Judge Fay’s cogent opinion except only so much thereof as holds that Wausau is bound by the arbitration provisions in the Bright/A-1 Subcontract. I respectfully dissent from the latter holding.
The majority correctly recognizes that the September 1993 Bright/A-1 Subcontract does not of itself bind Wausau to its arbitration provisions, notwithstanding Wausau’s status as Miller Act performance and payment bond surety for the project general contractor A-l, because Wausau was not a party to the Bright/A-1 Subcontract.[1] The majority instead holds that Wausau became bound to Bright under the Bright/A-1 Subcontract, including its arbitration clause, by the combined effect of three documents Wausau executed subsequent to the Government’s termination of A-l for A-l’s default on the project, namely: the May 20, 1994 Takeover Agreement between Wausau and the Government; the May 26, 1994 Completion Contract between Wausau and Rogers, the new completing prime contractor for the project hired by Wausau; and the June 14, 1994 Ratification Agreement between Wausau and Bright, as a result of which Bright later that month began and ultimately completed (or mostly completed), as a Rogers subcontractor, the remaining work called for in the Bright/A-1 Subcontract. I interpret these documents, and their collective effect, differently than does the majority.
The combined effect of the three documents relied on by the majority is simply that Wausau, as authorized by the Govern *1327 ment, undertook completion of the overall project by contracting with Rogers for Rogers to complete all the remaining work called for in A-l’s contract with the Government, Wausau agreeing to assign to Rogers its rights in the uncompleted subcontracts so that Rogers would, in effect, be substituted for A-l in those subcontracts with respect to the unfinished work thereunder, and Bright and Wausau agreeing that Wausau would pay Bright for all unpaid work done prior to A-l’s termination and that Wausau had a 120 day option to require Bright to so agree to complete for Rogers, which option was timely exercised. The net result was in essence that Wausau paid Bright for unpaid work performed to date and Rogers was substituted for A-l in the Subcontract as to the uncompleted work thereunder, and the subcontract’s arbitration clause binds Rogers and Bright, but not Wausau, just as it had bound Bright and A-l, but not Wausau. There is nothing unusual or unfair about this. Bright was protected by the payment bond for the work it had done and did not have to agree to Wausau having the option to cause Rogers to step into A-l’s shoes under the Subcontract; but, the Subcontract was subject to termination by virtue of A-l’s termination and Bright had no right to complete the work; and thus agreeing with Wausau as it did gave Bright, which had performed only about a third of the Subcontract, the opportunity, which shortly thereafter materialized, of being awarded the contract to complete the balance of the work on the same terms for a solvent prime contractor, Rogers.
Nothing in the documents relied on by the majority contains any agreement on Wausau’s part be bound by A-l’s obligations under the Subcontract unless Wau-sau itself undertook to complete the work, as opposed to having it done by a new completion prime contractor, and except that Wausau recognized and discharged its payment bond obligation to pay Bright for unpaid for work performed prior to A-l’s termination.
Wausau’s Takeover Agreement with the Government allows Wausau, in order to fulfill its performance bond obligations to the Government, to hire a completion prime contractor to complete the job, contains no arbitration clause (and incorporates no agreement which contains such a clause), and expressly provides it would not “be deemed to create any rights in favor of, or inure to the benefit of any third party or parties” (and would not enlarge Wausau’s obligations under its bonds).
Wausau’s Completion Contract with Rogers obligates Wausau to assign its rights in the uncompleted subcontracts to Rogers, but does not purport to recognize any obligations on the part of Wausau under those subcontracts, which Wausau was not a party to. And, of course, Bright (like the other subcontractors) was not a party to either the Completion Contract or the Takeover Agreement.
The only agreement executed by both Wausau and Bright is the Ratification Agreement. The Ratification Agreement commences by recitals that A-l has been terminated by the Government, which has called on Wausau (referred to throughout as “Surety”) under its performance bond, that Bright (referred to throughout as “Subcontractor”) has made a claim under the payment bond, and that the total Subcontract amount is $493,653, the value of the work completed is $154,609, of which $39,038.25 has been paid, leaving a balance of $107,040.30 now owing plus $7,730.45 as five percent retainage (specified in clause (8) of the recitals). Paragraph (1) states *1328 that Wausau has paid Bright $107,040.30 and that Bright releases Wausau from “all claims for monies due this day, excluding retainage withheld.” Paragraph (2) provides that “Subcontractor ratifies and agrees to complete its subcontract ... and further agrees to start work within seven (7) days after request by Surety ...” (emphasis added). Paragraph (3) provides:
“Since the work under the contract with the Owner of the project may be completed by a new completion prime contractor, Subcontractor agrees that Surety may assign its rights under the subcontract and this agreement to the completing prime contractor if done within one hundred twenty (120) days of the date of this agreement. Subcontractor will then look to the assignee for all further payments including all retainages whether withheld now as set forth above or in the future.”
Paragraph (4), the last paragraph, makes provision respecting payment by Wausau to Bright of the $7,730.45 retainage for previously performed work, and states that “such payment will constitute complete fulfillment of the obligations of Surety to Subcontractor.”[2]
Nowhere does the Ratification Agreement state that Wausau ratifies or is bound by the Subcontract. Rather, it expressly provides that if within 120 days Wausau assigns “its rights” thereunder and under the Ratification Agreement to a “new completion prime contractor,” Bright “will then look to the assignee for all further payments.” This is just what happened. Wausau did assign its rights under the Ratification Agreement to Rogers, Bright in June 1994 did start to complete the unfinished Subcontract work as a subcontractor of Rogers, and Bright did look to Rogers for further payments. Bright has been paid in full, including retainage, for work done prior to A-l’s termination. It is illogical to say that in these circumstances Wausau is somehow implicitly bound by the Subcontract, when Bright has expressly agreed to look only to the new prime completion contractor-Rogers-for “all further payments” and has agreed that Wausau’s payment of the $7,730.45 retainage for work done for A-l “will constitute complete fulfillment of the obligations of Surety to Subcontractor.”

. Cf. U.S. v. Pool and Canfield, Inc., 778 F.Supp. 1088, at 1090 (W.D.Mo.1991) (by issuing Miller Act payment bond as to general contract, surety did not agree to arbitrate claims by subcontractor merely because the subcontract between the subcontractor and the general contractor contained an arbitration clause).

. On December 14, 1994, Wausau paid Bright the $7,730.45 retainage and Bright executed a release in favor of Wausau. Arguably, the payment was not required by paragraph (4), which provides in full:
“If within one hundred twenty (120) days of the date of this agreement Surety, its agent or assigns has not called upon Subcontractor to complete, Surety will pay the retain-ages withheld as set forth in Item (8) provided the work in place has been accepted by the Owner. Tender of such payment will constitute complete fulfillment of the obligations of Surety to Subcontractor.”
Wausau explains that it construed paragraph (4) to apply whenever Wausau did not (within 120 days) call on Bright to complete for Wau-sau itself, as opposed to completing for the new completing prime contractor (Rogers). However, that construction is arguably inconsistent with the portion of the last sentence of paragraph (3) relating to retainages withheld "now as set forth above.” That possible inconsistency is, however, irrelevant to any issue on this appeal, as is also whether the $7,730.45 payment was required by the payment bond. Bright has been paid the retain-age for work' done before A-l's termination, and that was accomplished long prior to the events giving rise to the present controversy.